872 A.2d 1081 (2005)
377 N.J. Super. 321
STATE of New Jersey, Plaintiff-Respondent,
v.
Justin BEALOR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2005.
Decided May 6, 2005.
*1082 Brian S. O'Malley, argued the cause for appellant.
J. Vincent Molitor, Acting Assistant Prosecutor, argued the cause for respondent (Robert L. Taylor, Cape May County Prosecutor, attorney; Mr. Molitor, of counsel and on the brief).
Before Judges PETRELLA,[1] LINTNER and PARKER.
The opinion of the court was delivered by
PARKER, J.A.D.
Defendant, Justin Bealor, appeals from his conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50, after de novo review by the Superior Court.[2] Defendant's intoxication was found to be the result of marijuana use. He was sentenced to a six-month suspension of his driver's license, twelve to forty-eight hours in the Intoxicated Driver Resource Center, $250 fine, $100 DWI surcharge, $50 VCCB surcharge, $75 SN surcharge and $30 court costs. We reverse the DWI conviction.
On July 11, 2002, State Troopers Donahue and Ianella were patrolling in Sea Isle, *1083 Cape May County. Donahue testified that they first noticed defendant at about 2:21 a.m. as he was weaving from lane to lane and swerving over the yellow center lines. After defendant turned left onto JFK Boulevard, he was traveling eastbound in a westbound lane. The troopers continued to follow him until he pulled into a parking place. They effected a stop and both troopers approached the vehicle. They saw a twelve-pack of beer in the back seat and noticed an odor of alcohol and burnt marijuana on defendant's person. Defendant's eyes were bloodshot and glassy and his eyelids were droopy. His speech was slow and slurred, he fumbled for his documents and appeared confused. When asked if he had anything to drink, defendant responded that he "only drank a couple beers." The troopers asked defendant to get out of the car for a field sobriety test. Donahue testified that defendant's "clothes were all messy," he had an "odor of alcohol and marijuana on him," "[h]is knees sagged a little bit as he stood" and his speech continued to be slow and slurred. Defendant was patted down for weapons and a bulge was found in his back pants' pocket. Defendant claimed it was his wallet. When the trooper looked into the pocket, he saw a multi-colored smoking pipe with what appeared to be marijuana residue.
With respect to the field sobriety test, Donahue testified that defendant's voice was slow and slurred when he recited the alphabet, he paused at the letter "J," but completed the recitation. Apparently, no other field sobriety tests were performed after the pipe was found.
Defendant was placed under arrest for possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10, and driving while intoxicated, N.J.S.A. 39:4-50.[3] After his arrest, defendant was given Miranda[4] warnings and transported to the Woodbine barracks. At the barracks, defendant was given Miranda warnings a second time, and after signing a Miranda warning card, he admitted he had smoked marijuana that morning.
After the troopers administered the breathalyzer tests,[5] defendant became angry and abusive. When asked to provide a urine sample, he became even more abusive, cursing the troopers. The first urine sample was contaminated and defendant was asked to provide a second sample, leading to still more abusive behavior. The urine samples were sent to the State Police Laboratory for testing.
Trial began on April 10, 2003, and was continued on July 10, 2003. Defendant objected to the July 10 date and requested a date after August 27, 2003, so that he could attend an internship program in Utah. His request was denied and the trial proceeded on July 10 in defendant's absence.
The State presented the expert testimony of Michael Kennedy, a forensic scientist with the New Jersey State Police Laboratory. Kennedy testified that the primary marijuana metabolite was found in defendant's urine. He explained that the primary metabolite for marijuana is
a psychoactive ingredient in marijuana, what causes the intoxication is THC and you don't actually see that in the marijuana. We look for the metabolite of that compound and the metabolite that I found was the THC metabolite, and it's THCC, or, as you can see on the lab *1084 report, the chemical name for the compound.
The court then asked:
Q. Is there any doubt in your mind that what you found in that urine sample was the result[ ] of someone smoking marijuana or getting marijuana in to [his] system?
A. ... [T]here's no doubt that what I found is the metabolite of someone having smoked marijuana.... [T]he two tests that I did confirm that there was marijuana metabolite present in the urine.
The only other expert presented by the State testified with respect to the residue on the pipe found in defendant's pocket.
Based upon the testimony of Trooper Donahue as to defendant's appearance and erratic driving on the date of his arrest, as well as the expert's testimony that marijuana metabolites were present in defendant's urine sample, the municipal court judge found him guilty of driving under the influence of marijuana. The municipal judge specifically declined to consider defendant's post-arrest abusive behavior because defendant was not present to refute Donahue's testimony as to his conduct. Defendant appealed to the Superior Court, Law Division, and after a de novo review, he was convicted of the same offenses. The Law Division judge specifically found that "defendant's conduct was so out of control as to be a factor that I am absolutely taking into account in assessing intoxication."
In this appeal, defendant argues:
POINT ONE
THE CONVICTION FOR DRIVING UNDER THE INFLUENCE SHOULD BE DISMISSED BECAUSE THE STATE ELECTED TO PROCEED ON THE BASIS OF MARIJUANA INTOXICATION AND FAILED TO PRESENT EXPERT EVIDENCE OF SAME
POINT TWO
THE CONVICTIONS BELOW SHOULD BE REVERSED BECAUSE OF DUE PROCESS VIOLATIONS AND A DENIAL OF SPEEDY TRIAL
POINT THREE
THE COURT ERRED IN DENYING AN ADJOURNMENT TO ENABLE MR. BEALOR TO APPEAR AND PRESENT A DEFENSE
Defendant contends that the State failed to prove beyond a reasonable doubt that he was intoxicated while he was driving. He argues that "even accepting as true the scientist's conclusion that a marijuana metabolite was present in [his] urine... there was no scientific proof of intoxication." The State failed to present any evidence of the quantity of marijuana metabolites in defendant's urine, nor did the State present any evidence linking defendant's driving or post-arrest conduct with marijuana intoxication. Trooper Donahue testified as a fact witness and was never qualified as an expert who could render an opinion on the effects of marijuana intoxication on a person's conduct or driving capabilities. Nor, in fact, was he even asked about the effects of marijuana.
The term "under the influence" used in N.J.S.A. 39:4-50(a)
means a substantial deterioration or diminution of the mental faculties or physical capabilities of a person whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit-producing drugs.... [A] condition which so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway .... [or] if the drug produced a narcotic effect "so altering his or her normal physical coordination and mental faculties as to render such person a danger to himself as well as to other persons on the highway."

*1085 [State v. Tamburro, 68 N.J. 414, 421, 346 A.2d 401, 404-05 (1975) (citing State v. Johnson, 42 N.J. 146, 165, 199 A.2d 809, 819-20 (1964)) (quoting State v. DiCarlo, 67 N.J. 321, 328, 338 A.2d 809, 813 (1975)).]
To prove DWI based on marijuana intoxication, therefore, the State must show (1) that marijuana was present in the defendant's system while he was driving; and (2) that the marijuana resulted in a substantial deterioration or diminution of the defendant's mental faculties or physical capabilities as to make it improper for him to drive. In other words, the State must prove beyond a reasonable doubt that marijuana was the proximate cause of defendant's behavior. That may be done in a number of ways. "[A] qualified expert" can opine that a defendant is "under the influence" of a drug or narcotic "from the subject's conduct, physical and mental condition and the symptoms displayed." Tamburro, supra, 68 N.J. at 421, 346 A.2d at 405. Where a qualified expert testifies as to the characteristics of a drug and its effects on an individual, that testimony will be sufficient to establish that the drug will render a person a danger to himself or others on the highway. DiCarlo, supra, 67 N.J. at 328, 338 A.2d at 813. Even a non-expert witness, such as a police officer who has had "specific schooling and training in the field of narcotics .... if sufficiently experienced and trained may testify generally as to the observable reaction of drug users." State v. Jackson, 124 N.J.Super. 1, 4, 304 A.2d 565, 566 (App. Div.), certif. denied, 63 N.J. 553, 310 A.2d 468 (1973). With respect to the quantum of the drug in a defendant's system, the evidence must indicate that the amount was sufficient to produce the observed behavior or condition of the defendant. DiCarlo, supra, 67 N.J. at 328, 338 A.2d at 812-13.
Here, the record is devoid of any evidence of the quantum of marijuana present in defendant's urine sample, the effect marijuana has on an individual or the amount required to produce that effect. Trooper Donahue was never qualified as an expert nor was he questioned as to his training and experience in assessing the effect of marijuana use. The State's forensic expert, Kennedy, never testified as to the amount of marijuana metabolites in defendant's urine sample or the effect of marijuana on an individual's behavior or physical condition.
Alcohol intoxication or drunkenness is a sufficiently common condition that we may accept lay witnesses' testimony as to their observations and opinions that the defendant was intoxicated in the absence of a breathalyzer or blood alcohol test. A lay witness "of ordinary intelligence, although lacking special skill, knowledge and experience but who has had the opportunity of observation, may testify whether a certain person was sober or intoxicated." State v. Pichadou, 34 N.J.Super. 177, 180, 111 A.2d 908, 910 (App.Div.1955); see also State v. Cryan, 363 N.J.Super. 442, 455-56, 833 A.2d 640, 649 (App.Div.2003); State v. Guerrido, 60 N.J.Super. 505, 509-10, 159 A.2d 448, 450 (App.Div.1960). Marijuana intoxication, however, is not a matter of common knowledge such that an inference of intoxication may be drawn solely from a lay witness's testimony respecting defendant's behavior. State v. Smith, 58 N.J. 202, 213, 276 A.2d 369, 374-75 (1971).
While the municipal court judge considered the trooper's testimony as to defendant's driving and appearance but disregarded evidence of defendant's post-arrest behavior, the Law Division judge found that defendant was "so out of control as to be a factor ... in assessing intoxication." Since the record was devoid of *1086 evidence as to the effects of marijuana, the Law Division judge's finding was unsupported by the record.
Our scope of review is limited to a determination of "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809, 817 (1964). We "defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234, 240 (1999). "Moreover, the rule of deference is more compelling where... two lower courts have entered concurrent judgments on purely factual issues." Ibid., 724 A.2d at 240-41 We will not ordinarily "alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid.
Here, we do not question the credibility findings of the municipal court or the Law Division. We accept as true all of the State's evidence. In our view, however, the State failed to prove beyond a reasonable doubt that defendant was driving while under the influence of marijuana. We do not disagree with the Law Division judge's characterization of defendant's post-arrest behavior as "out of control." We cannot agree, however, that the evidence supported her conclusion that defendant's behavior resulted from marijuana intoxication. Nor can we agree with the municipal judge's determination that it does not matter how much marijuana was in defendant's system. The municipal judge's conclusion that any quantity of the drug in defendant's urine sample, however slight, is sufficient for a conviction, results in a per se rule; that is, any evidence of marijuana or marijuana metabolites in a defendant's system gives rise to a presumption that he was driving under the influence.
In our view, a per se rule cannot be applied to a DWI charge involving marijuana in the absence of any evidence as to the effect of marijuana on defendant's behavior or physical appearance.[6] If the State had introduced evidence of the effects of marijuana intoxication on this defendant, or the evidence demonstrated that defendant exhibited the general effects of marijuana, it would have been sufficient to support a finding beyond a reasonable doubt that defendant was driving under the influence of marijuana. Here, the State failed to present such evidence.
We are not overlooking the trooper's testimony that defendant had a smell of burnt marijuana on his person and that defendant admitted to smoking the drug sometime earlier. We have no evidence, however, from which to infer that defendant was under the influence of marijuana while he was driving. To reiterate our holding, if the State had produced expert testimonyor even lay testimony from the trooper based upon his training, knowledge and experiencerespecting the effects of marijuana intoxication on defendant's behavior, physical appearance and condition, it would have met its burden of *1087 proving beyond a reasonable doubt that defendant was driving under the influence of marijuana. It did not, and we are, therefore, constrained to reverse the conviction.
Reversed.
NOTES
[1] Judge Petrella did not participate in oral argument. The parties consented to his participation in the decision, however.
[2] Defendant was convicted of additional motor vehicle offenses, but has not included those offenses in his Notice of Appeal.
[3] He was subsequently charged with operating a vehicle while in possession of CDS, N.J.S.A. 39:4-49.1, but was acquitted of that offense.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] The results of the breathalyzer tests were not admitted into evidence.
[6] Possession or use of marijuana is a per se offense, and a defendant may be convicted of that offense based upon the arresting officer's testimony that the defendant smelled of burnt marijuana at the time he was stopped. State v. Judge, 275 N.J.Super. 194, 201, 645 A.2d 1224, 1227-28 (App.Div.1994). Here, although Trooper Donahue testified that defendant smelled of burnt marijuana, defendant was not prosecuted for possession of marijuana, and was found not guilty of operating a motor vehicle while in possession of marijuana, N.J.S.A. 39:4-49.1.