925 A.2d 745 (2007)
394 N.J. Super. 200
STATE of New Jersey, Plaintiff-Respondent,
v.
David L. FRANCHETTA, Jr., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 2007.
Decided June 28, 2007.
*746 Law Office of John W. Tumelty, Palermo, attorney for appellant (John W. Tumelty, on the brief).
Robert L. Taylor, Cape May County Prosecutor, attorney for respondent (J. Vincent Molitor, Assistant Prosecutor, of counsel and on the brief).
Before Judges A.A. RODRÍGUEZ, SABATINO and LYONS.
The opinion of the court was delivered by
LYONS, J.S.C. (temporarily assigned).
This case presents a novel issue as to whether a "rebound effect" or a "hangover effect" from a previous ingestion of cocaine constitutes being "under the influence" of a narcotic drug pursuant to N.J.S.A. 39:4-50. We hold that it does. Defendant, *747 David L. Franchetta, Jr., appeals from a judgment finding him guilty of driving under the influence of cocaine under N.J.S.A. 39:4-50.
The following factual and procedural history is relevant to our consideration of the issues advanced on appeal. On April 30, 2005, at approximately 4:19 a.m., Patrolman Osmundsen of the Middle Township Police Department responded to a two-car accident. There were police cars, emergency vehicles, and a tow truck present at the scene. Osmundsen was outside of his unit when he observed defendant's van driving past the accident scene at a high rate of speed. Osmundsen entered his patrol unit, followed defendant's van, and observed it crossing over the center line before defendant finally pulled over.
Osmundsen noticed that defendant's speech was slurred, his eyes were bloodshot, and he appeared lethargic. His movements were slow and uncoordinated and he was incoherent. When he exited his vehicle, defendant could not stand without assistance. He was arrested and transported to the police station where a breathalyzer test was administered which yielded a .00% blood alcohol content reading. Defendant was then taken to a local hospital where, approximately ninety minutes later, a blood sample was taken. Defendant was cooperative while at the hospital, but his movements remained slow and uncoordinated; he continued to be incoherent at times. The blood test indicated that the only substance of note present in defendant's blood was a cocaine metabolite known as benzolectamine.
Defendant was then interviewed by Sergeant Payne of the State Police, a certified drug recognition expert. Payne had defendant perform certain physical tests which defendant was unable to satisfactorily complete, such as walking heel-to-toe. He concluded that defendant was suffering from the "downside effects" of cocaine ingestion. Payne called the process "crashing," however, he determined that defendant was not under the pharmacological influence of cocaine while driving his van. In other words, defendant was not "on a high."
During defendant's trial, Dr. George Godfrey, after reviewing all of the studies and reports, opined that: (1) illness was not the cause of defendant's lack of physical coordination and mental ability; (2) a sleep-deprived person would not act as defendant acted that morning; (3) defendant was under the influence of cocaine at the time of his arrest; and (4) there was no evidence of any other drug in defendant's system. Godfrey testified that an individual is under the influence of a drug, medically speaking, so long as he or she is suffering from a physiological response to the drug:
Drugs can cause effect, but after they have had their effect, there can be a carry over action on the part of the body which affects coordination and function of the body. So that effect carries over or can carry over for a period of time and it depends on what is happening with the person. And in this instance, the coordination part is a rebound effect from the high. Now the muscles are not working the way they did because, shall we say, they are rather tired out and they are not coordinating well.
The doctor went on to say, "a person's under the influence of a drug as long as they're having a physiological response or action because of that drug."
Dr. Richard Saferstein testified as a defense expert witness. He opined that there was insufficient evidence in the record to find that defendant was under the influence of cocaine at the time.
*748 The Middle Township Municipal Court found defendant guilty of driving under the influence of cocaine, determining that he was operating his vehicle while experiencing a "rebound effect" from previous cocaine use. On appeal, the Law Division found defendant guilty as well. The court sentenced defendant as a second offender and imposed a two-year license suspension and a concurrent two-year registration suspension, forty-eight hours at the Intoxicated Driver Resource Center, a $506 fine, a $200 DUI surcharge, a $50 VCCB penalty, a $75 safe neighborhood penalty, thirty days of community service and $33 in court costs. A request for a stay was denied. This appeal ensued.
On appeal, defendant presents the following arguments for our consideration:

POINT I:
THE STATE MUST PROVE THAT FRANCHETTA WAS "UNDER THE INFLUENCE" OF A NARCOTIC, HALLUCINOGENIC OR HABIT PRODUCING DRUG AT THE TIME OF OPERATION UNDER N.J.S.A. 39:4-50.

POINT II:
THE TESTIMONY OF THE EXPERT WITNESSES PROVES THAT FRANCHETTA WAS NOT OPERATING HIS VEHICLE WHILE "UNDER THE INFLUENCE" OF COCAINE.
A. The state's drug recognition expert stated that Franchetta was not under the influence of cocaine.
B. The state's medical expert stated that Franchetta was not under the [i]nfluence of cocaine.
C. The defense expert stated that Franchetta was not under the influence of cocaine.
In this case, we are called to construe the term, "under the influence" as used in N.J.S.A. 39:4-50(a). The statute provides in pertinent part, "that a person who operates a motor vehicle while under the influence of . . . [a] narcotic" is guilty of driving while intoxicated. N.J.S.A. 39:4-50(a).
In State v. Bealor, we held:
The term "under the influence" used in N.J.S.A. 39:4-50(a) means a substantial deterioration or diminution of the mental faculties or physical capabilities of a person whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit-producing drugs. . . . [A] condition which so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway. . . . [or] if the drug produced a narcotic effect "so altering his or her normal physical coordination and mental faculties as to render such a person a danger to himself as well as to other persons on the highway."
[377 N.J.Super. 321, 327-28, 872 A.2d 1081 (App.Div.2005), rev'd on other grounds, 187 N.J. 574, 902 A.2d 226 (2006); see also State v. Tamburro, 68 N.J. 414, 421, 346 A.2d 401 (1975) (citing State v. Johnson, 42 N.J. 146, 165, 199 A.2d 809 (1964)) (quoting State v. Di Carlo, 67 N.J. 321, 328, 338 A.2d 809 (1975)).]
Here, the Law Division concluded that defendant's condition was the result of a "rebound effect" caused by cocaine. It stated:
[i]t's clear that whether you call it a cocaine hangover, or simply part of the continuum of the physical manifestations of significant cocaine consumption, that the defendant was operating a motor vehicle while under the influence of cocaine at the time of the stop . . . [f]or this reason, I do find that the State has proven beyond a reasonable doubt that defendant was under the influence and that he is guilty.
*749 We defer to the factual findings of the Law Division which concluded defendant was physically impaired. See State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). We, however, are required to examine whether N.J.S.A. 39:4-50(a) was appropriately interpreted by the trial court. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). "We are mindful of the general admonition that criminal statutes are to be strictly construed and that ambiguities are to be resolved in defendant's favor. Nevertheless, we are required to give words their fair meaning in order to achieve the evident statutory purpose." United States v. Ortega, 517 F.2d 1006, 1009 (3d Cir.1975). We have said that, "[i]f the legislative language is plainly expressed, there is no need to resort to construction, and effect is to be given to the plain meaning." State v. Tims, 129 N.J.Super. 399, 401, 324 A.2d 45 (App.Div.), certif. denied, 66 N.J. 326, 331 A.2d 26 (1974). "In any event, the search is for the intent of the Legislature as expressed in the statutory language, and it is that intent which is to be given meaning." Ibid. "The purpose for which the statute was enacted and the evil at which it is aimed are essential stepping stones on the pathway to the determination of the intent." Ibid.
In this case, the purpose of the statute is to deter and sanction those who disregard the safety and welfare of members of the public by operating a motor vehicle in an impaired state. See State v. Sturn, 119 N.J.Super. 80, 82-83, 290 A.2d 293 (App.Div.), certif. denied, 61 N.J. 157, 293 A.2d 387 (1972). It is clear from the proofs in this case that the cocaine which defendant ingested was not pharmacologically active at the time he was apprehended. It is also clear, beyond a reasonable doubt, however, that while defendant was not "high," he was physically impaired as a result of ingesting cocaine.
In Bealor, a case involving marijuana intoxication, we held that, "the State must prove beyond a reasonable doubt that marijuana was the proximate cause of defendant's behavior" in order for an individual to be under the influence of marijuana. 377 N.J.Super. at 328, 872 A.2d 1081. In this case, the credible proofs in the record indicate that the State proved beyond a reasonable doubt that cocaine was the proximate cause of defendant's behavior. As a result of ingesting cocaine, defendant's condition was such that his normal physical coordination was impaired so as to render him a danger to others on a highway.
The word "influence" is defined as, "the power of persons or things to affect others, seen only in its effects." Webster's New World College Dictionary 733 (4th ed.2001). The cocaine in this case affected defendant and its effects included slurred speech, uncoordination, and lack of coherency. N.J.S.A. 39:4-50(a) plainly and clearly was enacted to assure that those utilizing our highways are not impaired, particularly by the use of alcohol and narcotics. The cocaine ingested by defendant produced a physical effect which impaired his ability to properly operate a motor vehicle. Such interpretation squares with the plain language of the statute and the clear intent expressed by the Legislature in enacting it. As a result, we find that although the cocaine ingested by defendant was not pharmacologically active at the time of the incident, it was the proximate cause of his impaired behavior.
Accordingly, we affirm defendant's conviction. Defendant must present himself to the Middle Township Municipal Court no later than July 16, 2007 in order to effectuate the sentence.