**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3366-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KELSY L. RUSSELL, a/k/a
KELSY L. MANGINO,
KELSY I. RUSSEL, and
KELSEY I. RUSSELL,

     Defendant-Appellant.

_____

Submitted May 13, 2025 – Decided July 16, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 23-029-J.

Wronko & Loewen, attorney for appellant (James R. Wronko, of counsel and on the brief).

Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Tiffany M. Russo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kelsy Russell appeals from an order after a Law Division trial de novo finding her guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50. Defendant contends the trial judge erred by: (1) considering inadmissible lay opinion testimony from the arresting officer concerning defendant's substance induced intoxication; and (2) failing to review and consider the police body worn camera (BWC) footage of the entire encounter. Because we conclude the judge's consideration of the officer's testimony related to defendant's intoxication was proper and substantial evidence existed in the record showing defendant was guilty of DWI, we affirm.

I.

On August 13, 2021, defendant was charged with several drug offenses and traffic violations. In June 2023, pursuant to a plea agreement, defendant pled guilty to one count of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1), and was sentenced to five years Recovery Court probation. The traffic violations for DWI; driving or parked an unregistered motor vehicle, N.J.S.A. 39:3-4; careless driving, N.J.S.A. 39:4-97; and operating a motor vehicle while in possession of a narcotic, N.J.S.A. 39:4-49.1, were remanded to the Hanover Township Municipal Court.

2

At the municipal court trial, Lieutenant Anthony Vitanza testified on behalf of the State. Vitanza testified that he received training on Title 39 motor vehicle violations and estimated that during his career he made "500 to 600" DWI motorist stops or arrests. He estimated that he has interacted with impaired drivers under the influence of narcotics "thousands" of times over the years and had "a couple hundred" arrests.

Vitanza recalled responding to a department store based on a motorist's request for assistance in unlocking her vehicle. He met defendant who had locked her keys in her vehicle while her dogs were inside. He observed defendant's vehicle was not in a parking spot and was "[fifteen to twenty] feet from being fully in the parking spot." He observed that two people were standing outside the vehicle and the vehicle was running.

Vitanza testified he eventually identified the other individual as defendant's husband. He stated defendant told him they were going on a trip and that her husband went inside the store to buy t-shirts while she waited outside in the vehicle with their two dogs. He testified defendant informed him that she exited the driver's seat to retrieve something from the trunk, but it was locked and when she went back to open the driver's side door, it also was locked.

A-3366-23

Based on his observations of defendant and her husband, Vitanza stated that he suspected that they were both under the influence of substances.

Vitanza testified he noticed defendant's speech was slurred, she had "pin-point" pupils that were not reactive to the bright sunlight, and she was swaying. Vitanza stated based on his training and experience, these behaviors were indicative of someone under the influence of narcotics. Vitanza attempted to unlock defendant's vehicle with a lockout kit. He relayed that while attempting to unlock the vehicle he observed it was "in complete disarray," with open bags of food, dirty seats, liquid soaked papers, and debris all over the floor and back seat. Vitanza testified that based on his experience, "most people who use drugs . . . [have cars that] are in disarray . . . and generally are very filthy."

Vitanza stated, eventually, with the assistance of other officers, they were able to open a door of the vehicle and it started rolling forward, stopping after it hit the curb in front of the parking stall. The officers determined that the vehicle was left in drive and never placed in park. Vitanza testified he then asked defendant and her husband to produce identification. Vitanza stated when defendant's husband opened the center console to obtain his identification, he observed several prescription plastic bottles with worn out labels. According to Vitanza, these observations were significant based on his experience that

4

substance abusers often use old prescription bottles to hold narcotics or paraphernalia. He stated he also observed a fresh "track mark" on defendant's husband's bicep where blood was dripping. Defendant also produced her identification. At this point, Vitanza testified based on his observations he advised defendant that he believed she was under the influence of narcotics. He stated that he did not smell the odor of alcohol emanating from either her or her vehicle.

Vitanza testified he searched defendant's purse and found open packages of Suboxone.[1] He stated defendant informed him she had a prescription but was unable to produce any proofs. Officers searched the vehicle and located a suitcase which contained an estimated $138,000 cash and approximately twenty-five grams of methamphetamine. Defendant also possessed methamphetamine, which was hidden in her bra. Vitanza testified defendant was placed under arrest and transported to police headquarters, where he conducted standard field sobriety tests (SFST) on her. Vitanza explained that he conducted the SFST to confirm his suspicion defendant was under the influence of substances. This event was recorded on BWC.

---

[1] Possessing Suboxone, a Schedule III controlled dangerous substance, without a valid prescription is a violation of N.J.S.A. 2C:35-10.5.

Vitanza testified he administered the horizontal gaze nystagmus (HGN) test to defendant. Vitanza stated that he has administered the HGN test "a thousand times [. . .] [i]f not more." He explained this was a test that is done to determine narcotics usage. Vitanza noted that there were indications that defendant was under the influence, including a lack of smooth pursuit and inability to cross her eyes. Vitanza then conducted the walk-and-turn test. He testified that he had administered the walk-and-turn test "thousands" of times. Vitanza stated that defendant did not perform the test satisfactorily, as she stepped off once, swayed the entire time, did not count out loud, raised her arms, took more than nine steps, performed an improper turn, and did not stop at any point during the test.

Vitanza testified he also conducted the one-legged stand test which he has administered "the same amount of time" as the other tests because they are conducted together. Vitanza stated defendant did not perform the test satisfactorily, as she swayed for the entire test, could not keep her foot up for thirty seconds, and raised her hands to help with her balance. At this point, Vitanza stated he believed that defendant was impaired due to drug use and it was improper for her to be operating a motor vehicle. He explained that when someone is impaired, their motor skills are affected and that defendant's

6

impairment was shown by how she left the vehicle prior and during his encounter as well as her performance of the SFST. Vitanza stated that he did not believe defendant was under the influence of alcohol since no odor of alcohol was present. Breath testing was conducted on defendant to rule out alcohol intoxication, which was negative.

Vitanza testified that while defendant was in custody, her demeanor would go "back and forth" between being okay and being upset. He stated at certain points, she began "nodding off" which he clarified is a term law enforcement uses when someone is under the influence of narcotics. Vitanza explained that usually someone will appear to be fine but once the narcotic starts wearing off, they start nodding and fall asleep, which is what was observed of defendant in the processing room. He further stated that defendant declined a drug recognition evaluation. The BWC videos of the officers on the scene were introduced into evidence by the State for the court's review.

Defendant also testified at the hearing. She admitted operating the motor vehicle on the day of the incident and explained she primarily drove it because her husband did not have a license. She testified that there was a "big amount" of methamphetamine, needles, syringes, and a large amount of cash in the vehicle. Defendant testified she exited the vehicle to make sure she had

7

everything needed for the trip. However, the trunk was locked, and when she tried to return to the driver's seat, the door was also locked. Defendant then called police for assistance. She testified that she did not use methamphetamine. Defendant admitted that there was Suboxone in her purse, which she stated was a "maintenance drug" that she took that morning. Defendant testified the drug did not have an effect on her ability to operate a motor vehicle. Defendant alleged the methamphetamine found in her bra was there because her husband "asked her to hold it, to get on the plane, because he couldn't go a few hours [. . .] without doing it, because he was a drug addict."

At the conclusion of the trial, the municipal court found defendant guilty of DWI, possession of CDS in a motor vehicle, and careless driving. She was sentenced to fines and costs as well as a seven-month loss of her driving privileges and twelve (12) hours at the Intoxicated Driver Resource Center on the DWI conviction. The careless driving and possession of CDS in a motor vehicle charges were merged. The court found defendant not guilty of operating an unregistered vehicle.

Defendant appealed to the Law Division. The judge heard arguments and issued a written decision. Specifically, the judge found:

> Here, the [municipal] court found that Lt. Vitanza's testimony [credible]. Lt. Vitanza has thirty-eight years

8

of experience in the field. Lt. Vitanza testified as a lay witness to his personal observation of the [d]efendant's physical condition as well as her performance on the SFSTs. This court adopts the credibility findings of the municipal court as those findings are entitled to deference from this court.

The lower court found that the [d]efendant was showing signs of impairment. The [d]efendant exited the vehicle while it was still in gear and locked herself out of the vehicle. The vehicle was not fully parked in an appropriate parking spot. Defendant was not able to perform the various SFSTs. Defendant admitted to taking [S]uboxone the morning of the incident. The [d]efendant testified she did not have a prescription for the medication. The lower court erred when it used the "probable cause" burden of proof rather than beyond a reasonable doubt. This court finds that the State proved beyond a reasonable doubt that the [d]efendant was operating the motor vehicle while under the influence.

The judge found defendant guilty of DWI, careless driving and operation of a vehicle while in possession of CDS. The careless driving and operation of a vehicle while in possession of a narcotic were merged. Defendant was sentenced to same sentence imposed by the municipal court.

On appeal, defendant contends the following:

POINT 1

WHETHER THE TRIAL JUDGE ERRED IN ADMITTING [] VITANZA'S TESTIMONY.

9

POINT 2

WHETHER THE TRIAL JUDGE ERRED IN NOT
CONSIDERING AND RELYING SOLELY ON []
VITANZA'S VIDEO RECORDING.

POINT 3

WHETHER THE TRIAL JUDGE ERRED IN
FINDING DEFENDANT GUILTY OF DRIVING
UNDER THE INFLUENCE BEYOND A
REASONABLE DOUBT.

## II.

In an appeal from the municipal court to the Law Division, the standard of review is de novo on the record. Pressler and Verniero, Current N.J. Court Rules, cmt. 1.1 to R. 3:23-8 (2025). The Law Division renders a new decision on its own, although it gives due regard to the municipal judge's opportunity to view the witnesses. State v. Johnson, 42 N.J. 146, 157 (1964). Because the Law Division judge is not in a position to judge the credibility of witnesses, deference is due to the credibility findings of the municipal court judge. State v. Locurto, 157 N.J. 463, 472 (1999); See also R. 3:23-8 governing de novo criminal trials.

Our scope of review is both narrow and deferential. State v. Stas, 212 N.J. 37, 48-49 (2012). We will "uphold the factual findings underlying the trial [judge]'s decision, provided that those findings are 'supported by sufficient credible evidence in the record.' " State v. Boone, 232 N.J. 417, 425-26 (2017)

10

(quoting State v. Scriven, 226 N.J. 20, 40 (2016)).  However, our review is limited to determining whether there is sufficient credible evidence present in the record to uphold the findings of the Law Division, not the municipal court. Johnson, 42 N.J. at 162.  We may not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence."  State v. Barone, 147 N.J. 599, 615 (1997).  We also must defer to the trial court's credibility findings. State v. Cerefice, 335 N.J. Super. 374, 383 (App. Div. 2000).

Moreover, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error."  Locurto, 157 N.J. at 474.  "However, no such deference is owed to the Law Division or the municipal court with respect to legal determinations or conclusions reached on the basis of the facts."  Stas, 212 N.J. at 49.

III.

A.

Defendant argues under Point 1 that the Law Division judge erred in considering Vitanza's testimony because it was inadmissible opinion evidence since it did not satisfy the standards set forth in State v. Bealor, 187 N.J. 574, 587 (2006), and State v. Olenowski, 255 N.J. 529 (2023) (Olenowski II).

11

Defendant contends in <u>Bealor</u>, the Supreme Court distinguished between alcohol and marijuana impairment, noting that while an ordinary citizen can offer an opinion about alcohol intoxication, no such general awareness exists regarding marijuana intoxication. She argued <u>Olenowski II</u> further clarified that expert testimony is necessary to establish drug impairment and lay opinions are inadmissible. The defense also argues the Court in <u>Olenowski II</u> set forth a strict test for the admissibility of drug recognition expert (DRE) testimony, imposing limitations that the testimony can only address whether the observed behavior is consistent with the ingestion of drugs from the identified categories, without opining on whether the impairment was caused by those drugs or to what extent. Additionally, the State must make a reasonable attempt to obtain a toxicology report and the defense must be given an opportunity to impeach the DRE's testimony.

Defendant asserts Vitanza's testimony that defendant was under the influence of drugs because she had droopy eyelids, pinpoint pupils, slurred speech, and physical marks did not meet the requirements for admission. Defendant contends Vitanza's "opinions" were not based on the criteria established in <u>Olenowski II</u>, since he was not qualified through the rigorous process required for expert testimony. Furthermore, defendant argues that the

State circumvented the <u>Olenowski II</u> limitations by presenting Vitanza's testimony as that of a lay witness, rather than as an expert. As such, defendant argues that all of Vitanza's opinions should be excluded, as they fail to meet the admissibility requirements established by <u>Olenowski II</u>.

Defendant further asserts that the judge erred by failing to review and consider the police body camera of the entire encounter which she asserts proves that she was not under the influence of narcotics.

We are not persuaded. It is illegal to operate a motor vehicle "while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug[s]." N.J.S.A. 39:4-50(a). Accordingly, in cases where the State seeks to prove that a defendant was under the influence of a substance other than alcohol, the State must establish that: "(1) defendant was intoxicated[,] and (2) the cause of the intoxication was either narcotics, hallucinogens, or habit-producing drugs." <u>Olenowski II</u>, 255 N.J. at 550.

In <u>State v. Olenowski</u> (<u>Olenowski I</u>), the Court adopted a "Daubert-type"[2] standard for determining the reliability of expert evidence in criminal and quasi-criminal cases. 253 N.J. 133, 151-55 (2023). In <u>Olenowski II</u>, the Court held

---

[2] <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

that DRE testimony could satisfy the modified <u>Daubert</u> criteria for admission, subject to certain limitations. 255 N.J. at 546. In that regard, the Court stated:

> If feasible, the State must make a reasonable attempt to obtain a toxicology report based on a blood or urine sample from the driver. If the State fails to make such a reasonable attempt without a persuasive justification, the DRE opinion testimony must be excluded.
>
> [<u>Ibid.</u>]

The Supreme Court has held that lay persons, including police officers, can testify that someone was intoxicated, but lay persons cannot opine as to the cause of the intoxication when the cause of the intoxication is not alcohol consumption. <u>Bealor</u>, 187 N.J. at 574, 577, 585.

Relevant to this appeal, in <u>Olenowski II</u>, the Court reinforced <u>Bealor's</u> holding that testimony on intoxication due to drugs, whether expert or lay, requires corroborating evidence. 255 N.J. at 551. The independent evidence can include factual observations, a driver's admission, information about a driver's recent drug use, or drugs or paraphernalia found in the vehicle. <u>Id.</u> at 610.

In <u>Bealor</u>, our Supreme Court concluded that "the State proved beyond a reasonable doubt that defendant 'operate[d] a motor vehicle while under the influence of . . . narcotic, hallucinogenic or habit-producing drug[s]' in violation

14

of N.J.S.A. 39:4-50." 187 N.J. at 591. The Court based its conclusion on the arresting officer's

> fact testimony in respect of defendant's erratic and dangerous driving, his slurred and slow speech, his "bloodshot and glassy" eyes, his droopy eyelids, his "pale and flushed" face, his "fumbl[ing] around the center console and his glovebox searching for all his credentials," or the smell of burnt marijuana on defendant, his sagging knees and the "emotionless stare on his face."
>
> [187 N.J. at 590.]

In sum, Bealor "explicitly disavowed" the notion "that the nexus between the facts of intoxication and the cause of intoxication can only be proved by expert opinion" to support a conviction under N.J.S.A. 39:4-50. Id. at 591. Other cases with similar fact patterns have considered a wide variety of other corroborative evidence but usually involve either admissions or physical scientific results. See State v. Tamburro, 68 N.J. 414, 416-17 (1975) (defendant admitted to taking narcotics that day); State v. Franchetta, 394 N.J. Super. 200, 203 (App. Div. 2007) (blood test revealed cocaine metabolites).

Here, the Law Division judge conducted a Bealor analysis. The judge credited the officers' observations and found:

> This court finds that Lt. Vitanza did not opine as to the cause of the intoxication but only as to [d]efendant being under the influence. The State indicates the

15

[d]efendant's impairment was resulted [sic] from the Suboxone that was retrieved during the search and [d]efendant admitted to ingesting it earlier in that day. Here, the lower court found that Lt. Vitanza's testimony credible. Lt. Vitanza has thirty-eight years of experience in the field. Lt. Vitanza testified as a lay witness to his personal observation of [d]efendant's physical condition as well as her performance on the SFSTs.

Our role "is to 'determine whether the findings made could reasonably have been reached on sufficient credible evidence present[ed] in the record,' considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005). Here, the trial judge's conclusion of guilt is supported by sufficient credible evidence based on Vitanza's testimony. Vitanza was qualified to testify as to defendant's condition because he had participated in hundreds of DWI arrests and was specifically trained in conducting SFST. In addition, as the judge found, Vitanza did not offer an opinion on the cause of intoxication but rather stated that defendant was "impaired." The corroborating evidence presented at trial included: (1) defendant's inability to properly operate the vehicle by failing to place the vehicle in park; (2) Vitanza's observations of defendant's pin-point pupils and her swaying while being questioned; and (3) defendant's failure to adequately perform the SFSTs. We conclude this corroborative evidence aptly supports the judge's consideration of Vitanza's

testimony and its finding that defendant was under the influence of drugs in violation of N.J.S.A. 39:4-50.

B.

We now turn to defendant's second point contending the Law Division judge erred by "not considering and relying solely on Vitanza's . . . [BWC] video recording." We conclude there is no merit to this argument.

We reiterate that our role on appeal is to determine whether there is sufficient credible evidence present in the record to uphold the findings of the Law Division, not the municipal court. State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995). We may "not weigh the evidence . . . or make conclusions about the evidence," State v. Barone, 147 N.J. 599, 615 (1997). Unless we determine the Law Division's finding was "clearly a mistaken one and so plainly unwarranted . . . [and] the interests of justice demand intervention and correction . . . then, and only then, [] should [we] appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Avena, 281 N.J. Super. at 333.

We conclude the Law Division judge did not commit error in determining, as did the municipal court, that Vitanza's testimony was credible. We determine that the judge's reliance on Vitanza's testimony as opposed to the BWC video(s)

17

was not a clear mistake. These findings by the judge do not require our intervention. We observe the record exhibited that Vitanza testified clearly and in detail concerning his observations and testing of defendant and the judge providing more weight to this testimonial evidence as compared to the BWC video was not error.

To the extent we have not specifically addressed any of defendant's remaining legal arguments we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division